**BRUCE MILLAR AND DOUGLAS MILLAR, Plaintiffs**

**v.**

**GAR W. YATES, Defendant**

Civil No. 340-1967

Municipal Court of the Virgin Islands

Div. of St. Croix

Christiansted Jurisdiction

DUDLEY, BROWN & BRYANT (BRITAIN H. BRYANT, ESQ.),
Christiansted, St. Croix, Virgin Islands, *for plaintiffs*

YOUNG & ISHERWOOD (WARREN H. YOUNG, ESQ.), Christiansted, St. Croix, Virgin Islands, *for defendant*

JOSEPH, *Judge*

## OPINION

Plaintiffs Bruce Millar and Douglas Millar have filed a complaint herein against Gar W. Yates, defendant, wherein they allege, in substance, that as licensed real estate brokers doing business in Christiansted, St. Croix, they were employed to and did obtain tenants to lease defendant's home at Estate Montpellier, Christiansted, St. Croix;

526

that "the defendant did lease the said premises to Mr. and Mrs. Henry Asbury at the monthly rental of $1,100.00 for a period of three months each year that the premises were rented," and that "the Defendant has failed and refused to pay the Plaintiffs the entire reasonable value and customary charges for their brokerage services." They claim the sum of $220 plus costs and attorney's fees.

Plaintiffs sue for the reasonable value of the services which plaintiffs performed as brokers, but by reply to the defendant's motion for a more definite statement, allege an agreement to pay the "standard commission". Defendant by answer admits that plaintiffs were responsible for securing the tenants for his house and that by the terms of the lease he agreed to pay the "standard commission" which he alleges to be ten percent for the first year and five percent for the next four years. He avers that by lease dated October 16, 1962, he agreed to rent his property to Mr. and Mrs. Asbury for the months of January, February and March, 1963, at a monthly rental of $1,100, which period constituted the first year's rental, and that thereafter the lease was renewed. He claims to have paid the sum of $1,375 as real estate commissions to plaintiffs, and by counter claim urges that the amounts paid were in excess of those to which plaintiffs were entitled by the leasing agreement and that there is now due and owing to him the sum of $440 as a refund of the overpayment made to plaintiffs.

At the trial the lease dated October 16, 1962, was introduced in evidence by plaintiffs. This lease names Bruce, Mary and Douglas Millar as the "broker" who "brought about" the lease and contains the provision that "Landlord agrees to pay them standard commission for it or any extension or renewal by said Tenant." It is noted here that no objection has been made to the lack of necessary parties, and consequently this matter is not before the court.

Plaintiff Douglas Millar testified that defendant listed his house with their real estate office for rent and that his office secured the Asburys as tenants for the months of January, February and March, 1963, at the monthly rental of $1,100, from which they received a commission of $110 each month. Thereafter the tenants came to his office and stated that they wanted the house again "for next year" and it was agreed to renew the lease for the latter half of December, 1963, and for January, February and March of 1964. The Asburys rented the house for the same period of time the following season, and again the next year rented it for all of December, January, February and March. For the first two seasonal periods defendant paid plaintiffs the sum of $110 for each month the property was rented, said amount being calculated at ten percent of the monthly rental. Thereafter, on November 12, 1964, defendant wrote plaintiffs referring to the fee schedule of the Virgin Islands Territorial Board of Realtors and stating, in the words of this witness, that he thought the commission should be five percent because they were in the second year. Plaintiff Bruce Millar replied by letter dated November 14, 1964, that the fee schedule set forth *minimum* commissions and that he did not follow the schedule but charged a straight ten percent on a rental. He then stated, "Further, in this instance under discussion, even if we should consent to follow the published *minimum* rates, it presumably would be two more seasons before the Asburys will have occupied your home an entire 12 months." Both letters and the fee schedules of the St. Croix and the Territorial Board of Realtors were put in evidence without objection.

Although Mr. Millar testified that defendant replied to the letter of November 14, 1964, this reply was not introduced in evidence nor were its contents disclosed. However, from the evidence produced by plaintiffs it is clear that the

property in question was rented to the same tenants for a total of 14 months, the months being the winter months of four separate but consecutive years. Defendant paid a commission of ten percent for the first 12 of these months, the payments having been made after his protest in November, 1964, at the insistence of plaintiffs. For the thirteenth month a check for $55 was sent to plaintiffs by defendant and returned to him. A check in the same amount as commission for the final month, March, 1966, was also sent by defendant but was not negotiated by plaintiffs. It, too, has been placed in evidence.

Mr. Robert Stewart, a licensed real estate broker and president of the Board of Realtors of the Virgin Islands, testified as to the fee schedules and gave his opinion that the ten percent commission rate would be applicable to the first full consecutive year. He also stated that the reduction to five percent would not apply before the lapse of twelve consecutive months. When asked about seasonal rentals where property is rented only for a few months each year he stated that he had no experience upon which to base an opinion, as he knew of no situations where the same property had been rented to the same tenants for a seasonal period of more than one year.

Plaintiffs' suit is founded upon the contention that they are entitled to a commission of ten percent without regard to the provisions of the contract and the fee schedules of the Board of Realtors. Plaintiff Douglas Millar acknowledged, however, as did the witness he produced, that the term "standard commission" used in the contract referred to the said fee schedules and he also stated on cross examination that if the fee schedule did apply and his interpretation of it was accepted the two payments of $55 each tendered by defendant would fulfill his obligation.

██ Plaintiffs' first contention, that they are entitled to a straight ten percent commission, is in direct contradic-

tion to the terms of the express contract to which they are parties, at least insofar as the fee agreement is concerned. Where there is an express contract which has been fully executed by one of the parties thereto and all that remains to be done is the payment of money, the parties are bound by the terms of the agreement as to the amount of the payment or damages and cannot recover more than that sum on the theory of quantum meruit. See Corbin on Contracts, § 1110, and cases cited therein. Having proved the special contract to pay the "standard commission" of "10% of the first year's rental . . . 5% next four years' ", the parties are bound by that agreement.

■ This brings us then to the interpretation of the terms of the agreement. Plaintiffs' alternative contention is that the term "first year's rental" means an accumulation of 12 months from any number of years. Defendant takes the position that the "first year's rental" is that paid during or for the first year of the lease, commencing with its effective date and ending one year later. To adopt the view urged by plaintiffs would indeed be to place a strained interpretation upon the meaning of the word "year" and the term "first year's rental."

The word "year" when used in a contract or statute ordinarily means a calendar year commencing either on the first day of January or on some other date and ending 365 days or 12 months later. It may, however, depending upon the connection in which it is used, mean a period longer or shorter than 12 months, such as a school year, a cropping season, a political year or a theatrical season. See Words and Phrases; 86 C.J.S., Time, § 9; 52 Am. Jur., Time, § 10; Hops v. Poe, Cal., 1914, 143 P. 1072. A strong indication that this is the accepted meaning of the term in ordinary conversation or communication between persons is the fact that plaintiff Douglas Millar and the attorneys for both parties throughout the trial of the case re-

ferred to each seasonal period of rental as the first, second, third or final "year" of the tenancy. The complaint itself alleges that the premises were rented "for a period of three months each year that the premises were rented." Mr. Millar, in his testimony, stated that the tenant came to him and said that he wanted the house "again next year"; that "each year" they decided to come back "next year"; that the terms of each renewal were determined "each year"; that "one year of rentals" totaled $3,850.

■ No extrinsic evidence was given or proffered which would indicate that a meaning different from that ordinarily and usually given to the term "first year's rental" was intended here. For this reason the court rejects plaintiffs' interpretation and holds that the term used here means the rental paid or due for the months of occupancy during the first calendar year commencing with the date of execution of the lease and being in this case the winter season of 1962–1963, and more specifically the months of January, February and March, 1963. Plaintiffs therefore cannot prevail in their suit for debt.

■ In his counterclaim defendant seeks to recover the sums he paid in excess of five percent of the rentals for the months after March, 1963, during which the premises were rented to Mr. and Mrs. Asbury. Apparently believing that he was legally obligated to pay plaintiffs a commission for each of the seasonal rentals, he permitted them to perform certain services each year such as corresponding with the tenants and opening the house. Were this not the case the court would feel constrained to follow the decision of the court in Brown, W.H.V. & Co. v. One Park Ave. Corp., N.Y., 1929, 262 N.Y.S. 467, 79 A.L.R.2d 1965, wherein it was held that where a short term lease is involved, such as one for two months, which provided for the payment of real estate commissions on renewals of the lease, such commissions would be due only for the lease and for the

first renewal thereof, as the renewal clause in a lease must not be construed to mean that a renewed tenancy is also to contain a renewal provision, since, if renewals were allowed to go on ad infinitum, a species of perpetuity would be created that the courts could not countenance in the absence of express intention. By permitting the plaintiffs to perform these services for him the court believes that he has expressed an intention to pay the contract rate for each of the three renewal years, this rate being five percent of the rentals paid.

■ The court is not unmindful of the fact that defendant paid a ten percent commission for the second year of the lease without question, and made no protest until after the second year, and that he reluctantly continued the same payments after failing in his efforts to bring about an amicable reduction of them until their total number exceeded twelve. An agent acts in a fiduciary capacity and owes to the principal the utmost good faith. 3 C.J.S. Agency, § 138; Ellis v. Jones, 1932, Cal., 8 P.2d 933. As was said by the court in Snearly v. Hockett, 1960, Wyo., 252 P.2d 230:

"It was not the duty of the plaintiffs, or at least not the positive duty, to investigate and discover the various acts of the agent. On the contrary, it was the right of the plaintiffs to assume that their agent would act honestly and with integrity and within the scope of his authority. In such case courts will hesitate to let the agent retain money not belonging to him."

■ There the agent had overpaid himself from the principal's bank account on which he was permitted to write checks and the principal was given judgment for the excess payments. In the present case the overpayments were the result of plaintiffs' misrepresentations to the defendant as to the contractual provisions concerning the commissions. Plaintiffs have persisted in their efforts to collect more for their services than they agreed to accept

532

to the point of bringing this action. It cannot be doubted that they were equally insistent in their dealings with defendant who had a right to rely upon the truth of their representations and to expect them to act honestly and with integrity toward him.

The evidence shows that the house was rented for a period of three months the first year at a monthly rental of $1,100. The commission for this year at ten percent amounts to $330. For the next two years the house was rented for three and a half months each year and the fourth and final rental period was for four months. The rental collected for these eleven months amounted to $12,100, five percent of which is $605. The total for the four years at the contract rates therefore amounts to $935. Defendants paid plaintiffs a total of $1,375, resulting in an overpayment in the amount of $440. Judgment will be entered in favor of defendant against plaintiffs in the amount of $440 plus costs and an attorney's fee in the amount of $40.